**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

KURT GODDARD et al.,

Plaintiffs,

v. Case No. 07-CV-10608-DT

FOREST DUNES MANAGEMENT, LLC et al.,

Defendants.

______________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DIRECTING A RESPONSE TO PLAINTIFFS' MOTION TO AMEND**

On February 9, 2007, Plaintiffs Kurt Goddard, Connie Coffman, Benjamin Talarico, Kama Mastronomonaco, Gerald Respecki and Dominique Brighty initiated this case against Defendants Forest Dunes Management, LLC ("FDM"), Total Golf Management, Inc. ("TGM"), Forest Dunes Operating Company ("FDOC"), Chris Bronson and James R. Dewling. Motions to dismiss were filed on February 26, 2007 by Defendant FDOC and on March 16, 2007 by Defendants FDM, TGM and Dewling.[1] Both motions have been fully briefed, and the court concludes a hearing on the motions is unnecessary.[2] *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part and deny in part the motions.

---

[1]Defendant Bronson filed an answer on March 19, 2007, and has not moved for dismissal at this point in the litigation.

[2]On April 15, 2007, Plaintiffs filed a motion to amend their complaint. No response has yet been filed. The court will resolve the instant motions to dismiss based solely on the original complaint, and will address the motion to amend at a later date.

## I. BACKGROUND

In Plaintiffs' thirty-two count complaint, Plaintiffs assert various causes of action arising out of the alleged actions of Defendant Bronson, the general manager of Forest Dunes Golf and Country Club (the "golf course"). Plaintiffs allege that Bronson "perpetrated a campaign of severe and pervasive sexual harassment against several of the female employees," including Plaintiffs Brighty, Mastromonaco and Coffman. (Pls.' 3/27/07 Resp. at 1.) Plaintiff contends that Brighty, Mastromonaco and Coffman reported Bronson's behavior to their immediate supervisor, Plaintiff Goddard, who in turn reported the alleged harassment to the Michigan Department of Civil Rights (the "MDCR") and, possibly, the Equal Employment Opportunity Commission ("EEOC"). (*Id.*; Compl. at ¶¶ 41, 46; Pls.' 3/27/07 Resp. at 1.) Plaintiffs Respecki and Talarico participated in the investigation or otherwise opposed the alleged harassment. (Compl. at ¶¶ 44, 45.) Plaintiffs Respecki, Talarico and Goddard assert that their employment was terminated for their opposition to the alleged harassment and their roles in reporting the harassment. (*Id.* at ¶¶ 50-53.) Plaintiffs Mastromonaco and Brighty assert that they were terminated for their resistence to Defendant Bronson's advances and their opposition to his alleged discriminatory behavior.[3] (*Id.* at 54-56.)

Plaintiffs bring federal claims arising under two statutes: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, for retaliation (Counts 8, 15, 20, 25, 30), hostile work environment (Counts 1, 6, 13) and quid pro quo sexual discrimination (Counts 2, 7, 14); and the Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 et seq. (Counts 21, 26). Plaintiffs also assert state law claims for intentional infliction of

---

[3]Plaintiff Coffman is still employed by the golf course. (Compl. at ¶ 13.)

emotional distress (Counts 5, 12, 19, 24, 29, 32); violation of the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 et seq. for hostile work environment (Counts 3, 9, 16), quid pro quo sexual discrimination (Counts 4, 10, 17) and retaliation (Counts 11, 18, 22, 27, 31); and violation Michigan's Whistleblower Protection Act, Mich. Comp. Laws § 15.361 et seq. (Counts 23, 28).

In their motions to dismiss, Defendants assert that they do not qualify as "employers" for purposes of the Title VII and ELCRA claims and, further, Plaintiffs' Title VII claims are not administratively exhausted against them because Plaintiffs' EEOC charges only listed the golf course as the employer. Defendants also contend that both the federal and state Whistleblower claims should be dismissed as a matter of law, and the court should decline to exercise jurisdiction over any remaining state claims.

## II. STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.

*Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

When the motion to dismiss relies on matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). "Whether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case." *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998)). "However, '[w]here one party is likely to be surprised by the proceedings, notice is required.'" *Id.* (citing *Salehpour*, 159 F.3d at 204).

## III. DISCUSSION

As an initial matter, Defendants' motions seek dismissal of the federal claims brought under the Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 et seq. and the state claims brought under Michigan's Whistleblower Protection Act, Mich. Comp. Laws § 15.361 et seq. In response, Plaintiffs agree to dismiss these claims with prejudice. (Pls.' 3/27/07 Resp. at 22; Pls.' 4/6/07 Resp. at 32.) Accordingly, the court will dismiss Counts 21, 23, 26 and 28 with prejudice and without costs.

### A. EEOC Charge

Before bringing a Title VII action in federal district court, a plaintiff must first file an administrative charge with the EEOC. *Jones v. Truck Drivers Local Union No.* 299, 748 F.2d 1083, 1086 (6th Cir. 1984). "A corollary of this general rule is that a party must be named in the EEOC charge before that party may be sued under Title VII 'unless there is a clear identity of interest between [the unnamed party] and a party named in the EEOC charge . . . .'" *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir. 1987) (citing *Jones*, 748 F.2d at 1086). Two goals are served by requiring a plaintiff to name the Title VII defendant in the charge filed with the EEOC. "First, the charge serves to notify the defendant of the discrimination claim alleged against him." *Id.* (citing *Chicago Journeymen Plumbers' Local Union No. 130 v. Plummer*, 455 U.S. 1017 (1982)*;* *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981)). "Second, by naming the charged party and bringing him before the EEOC, that person is able to participate in conciliation efforts directed at securing voluntary compliance with the Act." *Id.*

The Sixth Circuit utilizes two tests for determining whether a party shares an identity of interest with another party so as to justify a failure to name the party on the EEOC charge. *Alexander v. Local 496, Laborers' Intern. Union of North America,* 177 F.3d 394, 411 (6th Cir. 1999). First, in *Romain*, the court adopted the Seventh Circuit's test, which finds "an identity of interest where the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Romain,* 836 F.2d at 245 (citing *Eggleston*, 657 F.2d at 905). The second test, also adopted in *Romain*, was developed by the Third Circuit in *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977). Under the Third Circuit's test, the court "looks at the relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur." *Romain*, 836 F.2d at 245-46. In looking at the relationship, the court examines four factors:

> (1) [W]hether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) [W]hether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) [W]hether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> (4) [W]hether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 246 (citing *Glus*, 562 F.2d at 888). Under either test, "[t]he 'identity of interest'

exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly [the exception] prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.* at 245.

In their complaint, Plaintiffs allege that FDOC owns the golf course, and that it is an absentee owner who does not have any involvement in the day to day operations of the golf course. (Compl. at ¶ 4.) Plaintiffs further allege that TGM is a management company under contract with FDOC to provide management and administrative services. (*Id.* at ¶ 5.) Defendant Dewling is President of TGM. (*Id.* at ¶ 7.) According to the complaint, Plaintiffs did not report the alleged harassment to TGM because they believed that "taking the issue to TGM would be futile because several other complaints to TGM regarding misdeeds of Defendant Bronson went unanswered and no action was taken. (*Id.* at ¶ 45.) Plaintiff Goddard "reasonably believed that TGM had no real authority" over Bronson because the management contract with TGM ends after 2006 and "Bronson has considerable weight in determining whether the management contract should be extended with TGM or offered to another company." (*Id.* at ¶ 45.) Eventually, however, TGM became aware of the alleged harassment during an August 7, 2006 meeting when Goddard told Dewling of Plaintiff Coffman's report of harassment and his own reporting of the harassment to the MDCR. (*Id.* at ¶ 47.) Coffman was later called into a meeting with Dewling and Goddard. (*Id.* at ¶ 48.) Coffman alleges that this meeting was the first time she ever met Dewling or knew that there was a management company involved in the operation of the golf course. (*Id.*)

Plaintiffs allege that FDM operates the facility and is held out to the employees as the employer. (*Id.* at ¶ 6.) Plaintiffs were apparently provided with employee handbooks from FDM, which referred to an "owner," but did not identify the owner. (*Id.* at ¶ 39.)

In its motion to dismiss, Defendant FDOC acknowledges that it is under a contract with FDM and that, pursuant to the contract, FDOC is the "Owner" and FDM is the "Manager" of the golf course. (*See* "Golf Management Agreement," Def. FDOC's Ex. D.)[4] FDOC contends that the terms of this contract provide that FDM is the only employer of the golf course's employees and is solely responsible to address any violations of discrimination laws. (*See* Def FDOC's Mot. Br. at 3.) FDOC also asserts that TGM is the sole member of FDM. (*See id.* at 2 n.4.) Further, according to FDOC, the Carpenters Pension Trust Fund, not currently a party to this litigation, is the sole

[4]FDOC relies on an unpublished case from the Southern District of Indiana for the proposition that, in ruling on Rule 12(b)(6) motion, the court can consider documents mentioned in a complaint, even if they are not attached to the complaint. *See Ratliff v. Beatrice Foods, Inc.*, No 01-0129, 2001 U.S. Dist. LEXIS 18394 (S.D. In. Oct. 31, 2001). In *Ratliff*, the district court considered EEOC charges which were referred to in the complaint, cited as attachments to the complaint, but were inadvertently not attached to the complaint. *Id.* at *6-8. However, the court is not persuaded that consideration of the "Golf Management Agreement" is proper under either *Ratliff* or Federal Rule of Civil Procedure 10. First, unlike in *Ratliff*, there is no indication in the complaint that Plaintiffs meant to attach a copy of the "Golf Management Agreement." Indeed, the contract mentioned in the complaint, which is only referred to in a general sense, is between FDOC and TGM, not FDM. (*See* Compl. at ¶ 5 ("TGM is a management company under contract with FDO[C] to provide management and administrative services.").) Moreover, Rule 10, on which *Ratliff* based its holding, provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(b). Here, the "Golf Management Agreement" was not attached to the complaint, and thus cannot be considered for Rule 12(b)(6) purposes. Nonetheless, even if the court were to consider the contract, it does little to advance FDOC's argument. Contrary to FDOC's contention, the contract between FDOC and FDM is far from clear as to which company was responsible for different supervisory duties.

shareholder of FDOC. (*Id.* at 4.) The Carpenters Pension Trust Fund became involved with the golf course when "it funded an acquisition and development loan for the property." (*Id.*) It later acquired the property in lieu of foreclosure in 2001. (*Id.*) FDOC asserts that it is essentially "a holding company for the [golf course] for the Carpenters Pension Trust Fund." (*Id.*)

Having reviewed the briefs and the allegations in the complaint, the court is not persuaded that the record has been sufficiently developed to allow the court to adequately apply either of the two tests set forth in *Romain.* Under the four-factor *Glus* test, the first factor for the court to consider is the "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint." *Romain*, 836 F.2d at 246 (citing *Glus*, 562 F.2d at 888). Plaintiffs knew of the existence and possible role of, at least, FDM prior to the filing of the EEOC charges. (Compl. at ¶¶ 6, 39.) There is also some indication that Plaintiffs Goddard and Coffman knew of the possible role of TGM and Dewling prior to the filing of the EEOC charges. (*Id.* at ¶¶ 47, 48.) Some courts have dismissed unnamed defendants where the plaintiffs knew of their existence and could have listed them on the EEOC charge. *See McClenton v. Office of Evolutions, Inc.*, No. 04-2889, 2006 WL 522389, *2 (W.D. Tenn. March 2, 2006); *Hulett v. America's Finest Service Co.,* No. 03-2497, 2005 WL 2233261, *7 (N.D. Ohio Sept. 14, 2005). However, the court finds that the remaining three factors of the *Glus* test are insufficiently developed.[5] For example, the court is not persuaded it has before it the necessary facts to determine

[5]Indeed, even the first factor is not sufficiently developed with respect to all of the Plaintiffs and all of the Defendants.

the similarity of interests between the golf course and the unnamed Defendants (*Glus* factor 2), the degree of actual prejudice the unnamed Defendants may have suffered due to their absence in the EEOC proceedings (*Glus* factor 3), and whether the unnamed Defendants somehow, either implicitly or explicitly, represented to Plaintiffs that its relationship with Plaintiffs was to be through the golf course (*Glus* factor 4). *Romain*, 836 F.2d at 246 (citing *Glus*, 562 F.2d at 888).

Similarly, without additional facts, the court cannot adequately apply the Seventh Circuit's test, which provides that "[a] suit is not barred 'where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation.'" *Id.* at 245 (quoting *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir.1985)). It is unclear to the court whether any of the unnamed Defendants had notice of the EEOC charges and whether such notice would have been irrelevant in any event in light of the apparent fact that no conciliation proceedings occurred. Further, the parties intimate that under some circumstances, the unnamed parties were required to give notice to one another of legal action, and possibly even indemnify or defend one another. These facts, not contained within the complaint, are not properly considered in a Rule 12 analysis, but would be relevant under Rule 50 or Rule 56.

Simply put, too many facts are unknown to justify granting Defendants' motions to dismiss. What is clear to the court is that, based on the allegations in the complaint and even on the assertions made in Defendants briefs, the unnamed Defendants are somehow related to or, in fact, control the management and operations of the golf course. Indeed, if Defendants are sufficiently inter-related, then an identity of interest

could be found, *Cole v. Appalachian Power Co. v. International Broth. of Elec. Workers, Local No. 978*, No. 94-0517, 1995 WL 463711, *15 (S.D. W.Va. Mar. 30, 1995), because "[a] 'clear identity of interest' implies that the named and unnamed parties are virtual alter egos," *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.,* 899 F.2d 1473, 1481 (6th Cir. 1990). Until this relationship is further explored, the court cannot conclude under Rule 12 that there is no set of facts which would establish that there is no identity of interest between the golf course and the unnamed Defendants. *Sistrunk*, 99 F.3d at 197.

As other courts have found, "[i]n the context of this motion to dismiss, the [c]ourt lacks sufficient information to conclude as a matter of law than an identity of interest is lacking." *Szoke v. United Parcel Service of America, Inc. No.*, 03-1628, 2006 WL 2792170, *2 (N.D. Ohio Sept. 26, 2006); *see also E.E.O.C. v. Jeff Wyler Eastgate, Inc.,* No. 03-662, 2006 WL 2785774, *5 (S.D. Ohio Jan. 9, 2006) ("At the very least, this [c]ourt should not dismiss the case based on a lack of identity of interest before the record is fully developed and all of the Glus factors can be equitably weighed."); *Fletcher v. Columbus Bd. of Educ.*, No. C2-02-843, 2003 WL 21799944, *4 (S.D. Ohio July 7, 2003) ("Thus, the [c]ourt is unable to apply the *Glus* and *Eggleston* analysis to these Defendants. Consequently, at this juncture, the Defendants' motion to dismiss any official capacity Title VII claim is denied without prejudice to renewal upon further development of the record."). Defendants may revisit this issue in a Rule 50 or Rule 56 motion, *see Tietgen v. Brown's Westminster Motors, Inc.*, 921 F.Supp. 1495, 1499 (E.D.Va. 1996), but under Rule 12, the court must deny their request to dismiss for Plaintiffs' failure to list them in their EEOC charges.

**B. "Employer"**

Defendants FDOC, TGM and Dewling next argue that Plaintiffs' complaint should be dismissed because they are not Plaintiffs' "employer" for purposes of Title VII or ELCRA.[6] Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . ." 42 U.S.C.A. § 2000e(b). Similarly, under ELCRA, "'[e]mployer' means a person who has 1 or more employees, and includes an agent of that person." Mich. Comp. Laws § 37.2201(a).

In their complaint, Plaintiffs allege that Defendants FDOC, FDM and TGM were "employers" for purposes of Title VII and ELCRA. (*See* Compl. at ¶¶ 15, 64.) As discussed above, Plaintiffs also set forth various allegations that FDOC, FDM and TGM owned, managed and operated the golf course. (*See id.* at ¶¶ 3-7.) The court finds that Plaintiffs' complaint withstands a challenge under Rule 12(b)(6). Defendants invite the court to apply various fact-specific tests to determine whether Defendants FDOC and TGM are "employers" for purposes of Title VII and ELCRA. *See Shah v. Deaconess Hosp.,* 355 F.3d 496, 499-500 (6th Cir. 2004) (applying common-law agency test to determine whether an employee-employer relationship existed under Title VII); *McClements v. Ford Motor Co.*, 702 N.W.2d 166, 172 (Mich. 2005) (holding that, to sustain a claim under ELCRA, an individual must show that "an employer affected or

---

[6]FDM concedes "[f]or purposes of [its 12(b)(6)] motion that "it, and only it, was the plaintiffs' employer." (Def. FDM's Mot. Br. at 8.)

controlled a term, condition, or privilege of his or her employment").[7]

The court declines the invitation as improper under Rule 12(b)(6). The court must construe the complaint in a light most favorable Plaintiffs, and accepting all of Plaintiffs' factual allegations as true, the court cannot conclude that Plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Sistrunk,*, 99 F.3d at 197; *Kline*, 87 F.3d at 179. Plaintiffs' allegations, while minimal, are sufficient to persuade the court that it is possible that further discovery may uncover facts sufficient to establish that TGM or FDOC were "employers," or joint-employers, under Title VII and ELCRA. On the other hand, as with Defendants' argument related to the EEOC charges, it may be that upon further development of the record, one or more of the defendants may be entitled to judgment as a matter of law under Rule 56. At this point, however, Plaintiffs factual allegations survive Defendants' motion.

With respect to Defendant Dewling, Plaintiffs concede that Dewling cannot be

---

[7]The court notes that under *McClements*, the relevant focus is on the relationship between the plaintiff and the defendant, rather than on whether the defendant qualifies as an "employer." *McClements,* 702 N.W.2d at 173. The court stated:

> M.C.L. § 37.2202 forbids any employer from engaging in acts of discrimination that are prohibited by the CRA. M.C.L. § 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. Indeed, the CRA appears to clearly envision claims by nonemployees for the failure or refusal to hire or recruit, M.C.L. § 37.2202(1)(a); the improper classification of applicants by a status prohibited under the CRA, M.C.L. § 37.2202(1)(b); and the discrimination against former employees by operation of a benefit plan or system, M.C.L. § 37.2202(1)(c). Accordingly, to limit the availability of relief under the CRA to those suits brought by an employee against his or her employer is not consistent with the statute.

*Id.*

held individually liable under Title VII. (Pls.' 4/6/07 Resp. at 20.) However, inasmuch as it does not appear that Plaintiffs asserted a Title VII claim against Dewling in their complaint, there is no need to dismiss any such claim. For clarity of the record, however, the court holds that any Title VII claim asserted against Defendant Dewling individually is barred.

However, a supervisor may be held individually liable under ELCRA. *Elezovic v. Ford Motor Co.,* 697 N.W.2d 851, 861 (Mich. 2005). Plaintiffs allege that Dewling is an individual subject to liability under ELCRA. (Compl. at ¶ 15.) Plaintiffs further allege that it was Dewling, TGM's President, who "met with Plaintiff Goddard and notified him that he was fired because he reported the sexual harassment to the MDCR." (*Id.* at ¶ 50.) Read liberally, there are also allegations in the complaint which support the inference that Dewling sanctioned the alleged harassment of, at least, Coffman, (*Id*. at ¶¶ 47-48.) As with the claims against TGM and FDOC, the court finds that Plaintiffs' complaint withstands Defendants' Rule 12(b)(6) motion.[8]

## IV. CONCLUSION

IT IS ORDERED that Defendants' February 26, 2007 and March 16, 2007 motions to dismiss [Dkt. ## 6 & 14] are GRANTED IN PART and DENIED IN PART.

---

[8]Additionally, the court rejects Defendants' argument that Plaintiffs have alleged no "actionable wrong" against them. Defendants' argument is premised on the assertion that they are not "employers" under Title VII and ELCRA. Because the court has rejected that argument, the court also rejects their argument that Plaintiffs have not alleged an "actionable wrong" against them.

Finally, because the court will allow at least some of Plaintiffs' federal claims to proceed, the court will exercise supplemental jurisdiction over the remaining, related state law claims, at least for the present. *See* 28 U.S.C. § 1367.

They are GRANTED with respect to Counts 21, 23, 26 and 28, which are DISMISSED with prejudice and without costs. They are DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants shall file a response to Plaintiffs' pending motion to amend [Dkt. # 22] by **April 30, 2007**.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 25, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 25, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522